## Buckland's Estate.

*Decedents' estates—Interest of husband electing to take against will—Act of April 1, 1909, P. L. 87—Appraisement—Confirmation —Final decree—Orphans' Court—Findings of fact.*

1. Where a husband has elected to take against his wife's will, and under the Act of April 1, 1909, P. L. 87, petitions that real estate to the value of $5,000.00 be appraised and set aside to him, and this petition is granted by the court and the appraisement made and confirmed, the title passes to him absolutely, the judgment is final and an immediate appeal therefrom may be.taken.

*Decedents' estates—Husband and wife—Election by husband to take against wife's will—Evidence—Claim of $5,000.00 under Act of April 1, 1909, P. L. 87—Right of administrator.*

2. Where it appears that a husband after the death of his wife made known to the other persons interested in the estate that he was not satisfied with his wife's will, and negotiations were entered into for a family settlement which, however, had not been finally concluded when the husband died, and it appears further that during his lifetime the husband had executed and acknowledged a written election to take against the will, which however had not been filed in the Orphans' Court pending the negotiations for a family settlement, there was evidence to warrant the finding of the lower court that he had validly exercised his right of election to take against the will and his estate is entitled to whatever benefit may accrue by virtue thereof. Such finding will not be reversed in the absence of clear error.

3. In such case where the husband elected to take against his wife's will his "rights and interest in said estate in such case under the laws of the State of Pennsylvania," he may have $5,000.00 set apart to him under the Act of April 1, 1909, P. L. 87, notwithstanding he did not make any specific claim for such amount in his election. After the death of the husband, therefore, his administrator may proceed to have the appraisement made in accordance with the provisions of said act.

Argued Feb. 4, 1913. Appeal, No. 411, Jan. T., 1912, by Ida V. White, Alice G. Hill, Cyrus A. Byers, Emma V. Mitchell and Norristown Trust Company, Guardian of Charles A. Byers, a minor, from decree of O. C. Montgomery. Co., July Court, 1912, No. 16, dismissing exceptions and confirming appraisement in the matter of the Estate of Florence P. Buckland, deceased. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Petition of administrator c. t. a. of surviving husband of decedent to have real estate of the value of $5,000.00 set apart to him under the provisions of the Act of April 1, 1909, P. L. 87. Before SOLLY, P. J.

The opinion of the Supreme Court states the case.

Edward H. Buckland, the surviving husband of Florence P. Buckland, the decedent, who died leaving no issue, elected during his lifetime to take against the will of his wife under the intestate laws of Pennsylvania. After his death his administrator filed a petition praying that under the Act of 1909, $5,000.00 might be appraised and set apart to him on behalf of the husband out of the real estate of the decedent. The petition was granted and the appraisement made. Exceptions were filed and subsequently dismissed and the appraisement was confirmed. An appeal was taken by sundry collateral heirs of Florence P. Buckland.

*Error assigned* was the decree of the court.

*Charles T. Larzelere, Franklin L. Wright* and *Nicholas H. Larzelere,* for appellants.—The learned court below erred in the inferences drawn from the undisputed facts which clearly showed Dr. Buckland had elected to take under the will of his wife, and that he negotiated for the sale of his life interest therein: Cake's App., 110 Pa. 65; Fahnestock's App., 104 Pa. 46; Hindman's App., 85 Pa. 466; Phillip's App., 68 Pa. 130; Sproull's App., 71 Pa. 137; Kittel's Est., 156 Pa. 445; McClintock's Est., 21 Pa. D. R. 1126; Wise v. Rhodes, 84 Pa. 402; Moore's Est., 23 Pa. C. C. R. 340.

*John M. Dettra* and *Montgomery Evans,* for appellee. —The election of Dr. Buckland to take against his wife's will was sufficiently proven: Phelps v. Phelps, 37 Mass. 556; Anderson's App., 36 Pa. 476; White's Est., 23 Pa. Superior Ct. 552; Davis v. Fenner, 30 Pa. Superior Ct. 389; Wise v. Rhodes, 84 Pa. 402; Bradfords v. Kents, 43 Pa. 474.

The administrator was entitled to take advantage of the husband's election: Greiner's App., 103 Pa. 89; Paul v. Paul, 36 Pa. 270; Bierer's App., 92 Pa. 265; Burkholder's App., 105 Pa. 31; Conrad v. Conrad, 36 Pa. Superior Ct. 154; Walworth v. Abel, 52 Pa. 370; Wilen's App., 105 Pa. 121; Phillips v. Phillips, 8 Watts 195.

The decision of the court confirming the appraisement was not final and the appeal was premature: Clark's Est., 12 Del. County 240.

OPINION BY MR. JUSTICE ELKIN, March 17, 1913:

Three questions are raised by this appeal, or, more accurately speaking, two questions are raised by counsel for appellant, and one by counsel for appellee. We will discuss these questions in the following order.

It is contended that the provision of the Act of 1909 relating to the procedure for making the appraisement is simply in aid of distribution, and is without finality until there shall be a final distribution of the estate. In

other words, it is the distribution and not the appraisement that determines the rights of the parties, and hence the decree confirming the appraisement is interlocutory. We cannot accept this as the correct view to be taken of the procedure for appraising and setting apart the five thousand dollars in value of property taken by the widow under the Act of April 1, 1909, P. L. 87. The procedure under this act is the same as that provided in Section 5 of the Act of April 14, 1851, P. L. 612, relating to widow's exemptions, and there is no substantial difference in principle as to the effect of the decree of confirmation in each class of cases. As to the effect of the appraisement of the widow's exemption, this court has decided that the confirmation is an adjudication to the widow of the property mentioned in the inventory and vests the same in her absolutely. It is a judgment in rem determining the status of the property and binding on the whole world: Runyan's App., 27 Pa. 121. The appraisement, when confirmed by the court, becomes a matter of record and has the effect of a judgment at common law: Seller's Est., 82 Pa. 153. The Superior Court has also decided that the exemption, when elected to be taken in real estate, becomes, after the confirmation of the report of the appraisers that the land cannot be divided without injury, a charge upon it, which may be enforced by the proper court making a decree of sale: Greenawalt's Est., 16 Pa. Superior Ct. 263. The same court also decided that the decree of confirmation cannot be attacked in a proceeding subsequently had before an auditor to distribute the proceeds of the sale of real estate: Scott's Est., 18 Pa. Superior Ct. 375. It is argued that the widow who takes by inheritance under the Act of 1909 stands in a different position than the one who claims an exemption under the Act of 1851, and that by reason of this difference the decree confirming the appraisement does not have the same effect in one case as in the other. But this is a distinction without any substantial difference. It is true the widow under the Act

of 1909 takes by inheritance while under the Act of 1851 she takes by election, but the procedure for appraising and setting apart the property, or of determining the value thereof and fixing the amount of the lien, is the same in both cases. If she chooses real estate, the title passes to her absolutely upon the confirmation of the appraisement, subject of course to certain liens, or in some instances perhaps to a defeasance. If the real estate cannot be divided without injury to the whole, the share of the widow becomes a lien upon it, and after absolute confirmation of the appraisement the judgment is final and cannot be attacked in a collateral proceeding. So far as we are informed, this has been the recognized and uniform practice under the Act of 1909 and we can see no reason to disturb it. Cases may arise under the Act of 1909, as they have arisen under the act of 1851, in which the estate may be of such a character as to make an appraisement unnecessary, as where it consists of cash in hand. But where an appraisement is necessary, and it has been made as the law requires, the confirmation is a definitive decree from which an appeal lies.

The important question in the case is whether the husband elected to take under the will of his wife; if he did, he is bound by that election and cannot claim under the intestate laws. It is argued with much force that his acts were equivalent to an election in pais, and that by reason of what he did in the management and control of his wife's estate after her death he is estopped from claiming otherwise than under her will. The answer to this position must of necessity depend upon the facts and they are to be determined by a proper tribunal. The learned Orphans' Court, after an exhaustive examination of the evidence and a careful consideration of the law, reached the conclusion that what was done by the husband did not amount to an election in pais. He found the facts in favor of appellee, and while there may be room for difference of opinion as to the inferences to be drawn from the facts, there

was ample evidence to sustain the findings, and this being so, we are not prepared to say there was such clear error as to warrant a reversal on this ground. It is perfectly clear that the husband was not satisfied with the will of his wife and that his attitude was made known to the interested parties very soon after her death. This resulted in negotiations for a family settlement which had been practically concluded at the time of his death. During the entire course of these negotiations, the attitude of the husband was, not that he would elect to take under the will, but that he would take against the will, unless a satisfactory adjustment could be made. All of these matters were fully considered by the learned court below with the result above indicated. Under these circumstances we do not feel warranted in saying that the learned court below committed error either in his findings of fact or in his conclusions of law on this branch of the case.

On the other hand we think the learned Orphans' Court was clearly right in finding that the husband had elected to take against the will of his wife. The negotiations for a family settlement were based upon the known attitude of the husband that he would take against the will of his wife unless there was an amicable adjustment between the interested parties and himself satisfactory to him. He did make his election to take against the will of his wife in writing, duly acknowledged in his lifetime. Under the circumstances of the present case this was a valid exercise of his right of election and his estate is entitled to whatever benefit accrued to him by reason thereof. We fully agree with learned counsel for appellant that the election could not be made by the executor or administrator of the deceased husband. Our own cases so decide. But in the present case the election was not made by an executor or administrator; it was made by the husband in his lifetime.

One more question remains to be considered. The

election of the husband to take against the will of his
wife contained a provision claiming his "rights and in-
terest in said estate in such case under the laws of the
State of Pennsylvania." He did not make any specific
claim to have property to the value of five thousand
dollars set apart to him under the Act of 1909. He
claimed the right to take under the intestate laws gen-
erally. After his death his administrator c. t. a. pre-
sented a petition claiming five thousand dollars for the
benefit of the estate of the deceased husband and re-
questing the appointment of appraisers to have the same
set apart, or valued, in accordance with the provisions
of the acts of assembly. It is argued that the right of
election to take against the will of his wife is a personal
privilege in the husband which cannot be exercised by
the administrator, and since the administrator is with-
out power to make the election, he likewise is without
authority to have the property appraised and set apart
even when the election was properly made in the life-
time of the husband. That the election cannot be made
by the administrator after the death of the husband
must be conceded, but we cannot agree that the admin-
istrator may not proceed after the husband has properly
exercised his right of election to have the property ap-
praised and set apart in accordance with the provisions
of law. In Paul v. Paul, 36 Pa. 270, it was held, that the
personal representatives of a widow who had elected to
take against her husband's will had standing in equity
to compel an accounting for the rents and profits which
she should have received although dower had not been
assigned in her lifetime and no proceedings had been
instituted for that purpose. So, too, this court decided
in Greiner's Appeal, 103 Pa. 89, that the death of a
widow after her election to take against the will of her
husband and before the amount of her share was ascer-
tained, will not affect the right of property which vested
in her immediately upon such election. These cases in
principle rule the one at bar. In this connection it

should be borne in mind that the Act of 1909 is but an amendment to the Act of April 8, 1833, P. L. 315, relating to the descent and distribution of the estates of intestates. The share or interest to which a person may be entitled under the act passes as an inheritance, and is subject to the same general rules of law. In the present case, if the wife had died intestate, the quantum of the share or interest of the husband under the Act of 1909 would have immediately vested by operation of law. The procedure to appraise and set apart is but a means to an end in ascertaining the value of the property which the husband has the right to take under the act, but it in no way interferes with the interest which vested in him immediately upon the death of his wife. It can make no difference in principle that the wife died intestate and the husband elected to take against her will. As to the widow, this was squarely ruled in Guenthor's Estate, 235 Pa. 67. The same rule must necessarily apply to the husband. It is further suggested that a husband who elects to take against the will of his wife is not entitled to take such share in her estate as she could have taken in his under the Act of 1909. It is true there is no such express provision in the Act of 1909, but in the Act of May 4, 1855, P. L. 430, it is provided that a husband electing to take against the will of his wife may take such share in her estate as she could have elected to take in the estate of her husband. In construing these acts it has been held that when a husband does elect to take against the will of his wife, his share is to be ascertained in the light of the law in force at the time of the death of the wife. This precise question was considered in Moore's Estate, 50 Pa. Superior Ct. 76, in which it was decided that where a wife died testate after the passage of the Act of 1909, leaving to survive her a husband and no issue, but collateral heirs only, the husband who elects to take against her will is entitled to real or personal estate, or both, to the aggregate value of five thousand dollars, and to

such other share as the wife could have taken under the same act. The Superior Court, speaking through Judge HEAD, who wrote the opinion in that case, gave the question very careful consideration. The opinion is exhaustive and conclusive and in the light of the authority of our own cases no other conclusion could be reached without doing violence to settled rules of construction.

Assignments of error overruled and decree affirmed at cost of appellant.