## Dalsen's Estate.

Argued November 30, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Robert F. Bonner* and *Randolph W. Childs,* with them *K. C. Acton,* for appellants.—The widow's election was

invalid because it was not delivered to the executor as required by the acts of assembly: Kester's Est., 23 Luzerne L. R. 82; Smith's Est., 16 Delaware Co. R. 186; Wilson's Est., 297 Pa. 348; Beck's Est., 265 Pa. 51.

The election was also void because it was improperly indexed: Mitchell's Est., 12 Pa. D. & C. 745; Prouty v. Marshall, 225 Pa. 570.

*Wm. Y. C. Anderson,* with him *Daniel C. Donoghue* and *Edward J. McGrath,* for appellee.—The purpose and intent of the legislation have in the present case been carried out: Celenza's Est., 308 Pa. 186; Minnich's Est., 288 Pa. 354; Swartz's Est., 72 Pa. Superior Ct. 143; Bailey's Est., 285 Pa. 408.

OPINION BY MR. JUSTICE KEPHART, January 3, 1933:

Testator's wife was weak minded at the time of his death and the court of common pleas appointed a guardian to take care of her estate. Testator died February 2, 1930, and the court having jurisdiction of the guardian authorized it on behalf of the widow to take against testator's will. Part of his estate consisted of realty.

On October 7, 1930, the guardian executed and acknowledged a formal election to take against the will. This election was recorded in the office of the recorder of deeds of Philadelphia County, where the will was probated. It was properly indexed in the grantor index under Charles W. Dalsen Estate, but the grantee index was as follows: "Continental-Equitable Title & Trust Company" omitting "guardian," etc. The election was then filed with the clerk of the orphans' court and made part of the record of the Dalsen Estate. Shortly after recording, a copy of the election was mailed to and received by the executor. The original was not delivered to him but remained in the office of the clerk of the orphans' court.

When the executor's account was called for audit, the residuary legatees claimed the election was invalid be-

cause it had not been delivered to the executor. The auditing judge agreed with this contention, but the court in banc decided that the election was valid. This appeal followed.

Section 23 (b) of the Wills Act of June 7, 1917, P. L. 403, as amended by the Act of 1929, reads: "A surviving spouse electing to take under or against the will......shall......manifest the election by a writing signed by him or her, duly acknowledged......and delivered to the executor or administrator......within one year after the issuance of letters testamentary or of administration. Neglect of refusal or failure to deliver such writing within said period shall be deemed an election to take under the will." Section 23 (c) as amended provides: "The election by a surviving spouse......shall ......at the cost of the estate, be recorded, by the personal representative of the decedent, in the office for the recording of deeds......and shall be indexed by the recorder in the grantors' index under the name of the decedent, and in the grantees' index under the name of the surviving spouse...... After the said election shall have been recorded in the office for the recording of deeds,......the said election, at the cost of the estate, shall be filed in the office of the clerk of the orphans' court."

The principle question in this appeal is whether the election was invalid because it was not delivered to the executor. All steps required by the act of assembly had been taken, save only that the paper had not been handed to the executor and he had not personally carried it to the office of the recorder of deeds. Prior to the Act of April 21, 1911, P. L. 79, election by the surviving spouse was a matter in pais and no formality was required in giving notice of such election to the executor: Greiner's App., 103 Pa. 89. The Act of 1911 required that an election be properly executed, delivered to the executor and recorded in the office of the recorder of deeds and register of wills.

The Wills Act required the election to be made within two years, and properly indexed; also "failure to elect" in the manner prescribed should constitute an election to take under the will. The Act of April 2, 1925, P. L. 117, reduced the period from two years to one year and the Act of April 24, 1929, P. L. 648, made no change in the provisions, except to remove the necessity for recording when only personal estate was involved.

We have held in a number of cases that the provisions of the Act of 1917 are mandatory, as were those of its predecessor, the Act of 1911: Beck's Est., 265 Pa. 51. Thus in Wilson's Est., 297 Pa. 348, where a widow's election was duly acknowledged and recorded, but not delivered to the executor nor filed in the office of the register of wills, we held it invalid. In Minnich's Est., 288 Pa. 354, a husband gave notice of an election to the executor within the then provided two-year period, but did not file the formal election until more than two years after the period, we held that the provisions of the act were mandatory as to time, and the election invalid. Salomon's Est., 297 Pa. 299, and Daub's Est., 305 Pa. 446, are to the same effect. The court said in the latter case, at page 453: "No matter how hard the decision in a particular case may seem to be, if a widow does not make her election within the statutory period, the courts ......must declare that she is deemed to have made an election to take under the will, for this 'statute fixes the time as definitely as does that relating to taking appeals, and both are mandatory...... In view of the positive provisions of the statute we are not persuaded that relief could be granted ex gratia.' ...... 'The intention of the Act of 1917 is to promote certainty in the settlement of estates.' "

In determining whether the steps taken effect a substantial compliance with the mandate of the act, the purposes intended to be accomplished by the act must be considered and it should be so interpreted as to make a workable statute. An election by a surviving spouse to

take under or against a will is a necessary link in the chain of title of decedent's real estate; it is therefore an indispensable part of a title. It is necessary that the records where titles are examined should show a compliance with the act of assembly. It is also necessary for protection of the estate, its proper administration and settlement, and to prevent the spurious claim of an unlawful spouse, that the executor should have notice of the election. Viewing the act from this standpoint, while it enables the spouse to secure rights granted under our statutes, its primary purpose was to make certain the title to decedent's real property and to secure an orderly settlement of the estate. The result of compliance with the act is to advise those dealing with the property of a decedent of the nature, quantity, and quality of the spouse's interest. Titles are made more secure, and possible clouds or encumbrances removed.

Referring to the manner of performing the various acts prescribed by the statute, Justice WALLING said, in Minnich's Est., supra, "The statute is not wholly inflexible." That a substantial as well as a literal compliance with the act will be valid is further illustrated in the following cases: Celenza's Est., 308 Pa. 186, where the surviving spouse was in Italy and the election was by an attorney in fact, having only a general power of attorney, with no special authority to make an election, we upheld the election, though the act provides that the writing shall be "signed by him or her, duly acknowledged before an officer." The action of the Superior Court in Swartz's Est., 72 Pa. Superior Ct. 143, in upholding an election in due form which was merely exhibited to the executor and placed on record by the attorney representing the spouse, was in effect a decision that a constructive delivery took place, though the paper was not put into the manual possession of the personal representative. See also Morrison's Est., 275 Pa. 180; McCutcheon's Est., 283 Pa. 157.

The election must be duly executed, acknowledged, recorded in recorder's office, properly indexed, and filed with the clerk of the orphans' court, where it may be placed among the papers of the estate. These steps are imperative. There is no question of execution and acknowledgment, nor of recording in the proper office and filing in the office of the clerk of the orphans' court. The executor had a copy of the paper. Barring indexing (later discussed), there can be no doubt that the substantial results contemplated by the act were accomplished. The fact that an officer of the corporation executor did not deliver the paper to the recorder or the clerk of the orphans' court is not material, as seen by Swartz's Est., supra. Law is concerned with the substance of what is done and its results. It is true the executor did not have manual possession of the instrument; neither did he in Swartz's Est., supra. The main purpose of the act in prescribing delivery of the election to an executor is to advise him of the decision of the spouse as to the interest he or she intends to claim, so that the estate may be settled accordingly. It also gives notice of an unexpected claim by a spurious spouse, but if an executor has knowledge of such an election, his knowledge cannot be increased by the mere temporary possession of the paper, which must ultimately be recorded and filed in the orphans' court. Here the executor had a correct copy of the election, and later unsuccessfully took steps in the common pleas to have it set aside. With this knowledge, and a written instrument properly executed by a spouse within the statutory period, placed among proper court records, we hold there was a substantial compliance with the act to such an extent that we may say as was in effect said in Swartz's Est., supra, there was a constructive delivery.

The act provides the election shall be indexed in a certain way, but incorrect indexing does not condemn an election. Indexing is an act of a county officer; if not proper, courts will compel proper indexing. It may be

that intervening rights of third parties could not be prejudiced without notice through failure to properly index an election, and that responsibility for such failure might fall on the officer. The validity of the election as such would not be affected by these acts. In the present case the grantor's index was in order, and such indexing gave notice of the spouse's interest to all persons dealing with decedent's property. Title could not be safely taken without an examination of an election so indexed. This conclusion is not in opposition to anything we have said in Prouty v. Marshall, 225 Pa. 570. We distinguish the facts in that case from the present case: Crippen v. Bergold, 258 Pa. 469. It would be better, however, to have the grantee's index corrected. We conclude, therefore, that the court in banc did not err in sustaining the election.

Decree affirmed.